IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERMONT JUVENILE FURNITURE MANUFACTURING, INC. *d/b/a Pet Gear, Inc.* | : : : : | CIVIL ACTION |
| v. | : : | |
| FACTORY DIRECT WHOLESALE, INC. | : | NO. 16-1791 |

MEMORANDUM

Dalzell, J.                                                                                                               August 22, 2016

### I.    Introduction

We consider here defendant Factory Direct Wholesale, Inc.'s ("Factory Direct") motion to dismiss plaintiff Vermont Juvenile Furniture Manufacturing, Inc.'s ("Pet Gear") complaint for lack of personal jurisdiction and improper venue. Factory Direct also moves in the alternative to transfer this action to the Northern District of Georgia.

Pet Gear brings this patent infringement suit against Factory Direct. We have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

For the reasons set forth below, we will deny Factory Direct's motion to dismiss, but grant its motion to transfer this case to the Northern District of Georgia.

### II.    Standard of Review

Defendants may move to dismiss a complaint a complaint due to lack of personal jurisdiction or improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and Rule 12(b)(3), respectively. The plaintiff has the burden to demonstrate that the facts establish personal jurisdiction over the defendant. See Cumberland Truck Equipment Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361,

368 (3d Cir. 2002)).  Conversely, the defendant bears the burden of showing that the plaintiff's choice of venue is improper.  Id. (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982)).  When reviewing a motion to dismiss for lack of personal jurisdiction or improper venue, we must accept the allegations found in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor.  Id. (citing Cateret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 (3d Cir. 1992)).

Defendants may also move to transfer venue pursuant to 28 U.S.C. § 1404(a), which provides that a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice…transfer any civil action to any other district or division where it might have been brought."  The defendant seeking transfer "bears the burden of proving that transfer is proper and the Court has broad discretion in deciding whether to transfer an action."  Saint-Gobain Calmar, Inc. v. National Products Corp., 230 F. Supp. 2d 655 (E.D. Pa. 2002) (citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973)).

We recite the facts as they appear in the complaint, and as evidenced by the documentary record, in the light most favorable to Pet Gear.

**III.    Factual Background**

Pet Gear is a Vermont corporation that designs and manufactures pet equipment and supplies.  Compl. at ¶¶ 1, 5.  One of its products is a line of booster seats designed to secure pets during car rides.  Id. at ¶ 6 and Ex. A.  These pet booster seats are covered by two separate patents.  Id. at ¶¶ 7-8, Ex. B. and Ex. C.  Defendant Factory Direct is a Limited Liability Company incorporated and located in the state of Georgia -- specifically, the Northern District of Georgia.  Id. at ¶ 2 and Liu Decl. at ¶ 2.  Factory Direct manufactures and sells pet booster seats similar to those Pet Gear sells.  Id. at 9.  In 2011, Pet Gear sent a cease and desist letter to

Factory Direct informing it of the alleged patent infringement, and Factory Direct responded by stating that it would cease selling the product in question. Id. at ¶¶ 9-10, Ex. D, and Ex. E. But Factory Direct did not comply with those promises and continued to sell the pet booster seats. Id. at ¶ 11. Factory Direct admits that it sold a total of four pet booster seats in Pennsylvania in 2016, including one shipped to the address of plaintiff's counsel. Liu Decl. at ¶ 7. The booster seats are manufactured in China and sold nationwide via Amazon.com and independent third-party websites. See Resp. Opp'n Mot. at 17-18 and Liu Decl. at ¶ 4. Factory Direct has no property in Pennsylvania, maintains no bank accounts in Pennsylvania, and has no employees in the Commonwealth. Liu Decl. at ¶ 3. The only connection the Eastern District of Pennsylvania has to this case is the pet booster seats Factory Direct sold to consumers here.

Pet Gear initiated this action by filing its complaint on April 14, 2016, and Factory Direct responded with this motion to dismiss on July 1, 2016.

**IV.** **Discussion**

Factory Direct moves to dismiss Pet Gear's complaint for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue to the Northern District of Georgia. We will analyze these issues separately.

**A.** **Motion To Dismiss For Lack Of Personal Jurisdiction Or Improper Venue**

Factory Direct first moves to dismiss Pet Gear's complaint for lack of personal jurisdiction or improper venue. Federal Circuit precedent controls personal jurisdiction issues in patent infringement cases. See Grober v. Mako Prods. Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012). Courts use a two-part inquiry in patent cases to determine whether personal jurisdiction exists: (1) does jurisdiction exist under the state long-arm statute?; and, if so, (2) would

exercising jurisdiction comport with due process?  Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005).

Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest extent permitted under the United States Constitution.  42 Pa. Cons. Stat. § 5322(b); Pennzoil Prod. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (exercising personal jurisdiction over non-resident defendants authorized to the constitutional limits of the Fourteenth Amendment's Due Process Clause).  We must therefore inquire whether our exercising specific personal jurisdiction over a defendant is constitutional.[1]

A plaintiff must show that the defendant purposely directed its activities toward residents of the forum state, and that the plaintiff's claim arises from, or relates to, those activities in order to satisfy due process requirements for specific jurisdiction.  Radio Systems Corp. v. Accession, Inc., 638 F.3d 785, 789 (Fed. Cir. 2011).  The Federal Circuit has found that companies purposely direct activities to a forum state when they sell and ship products to that state.  See In re TC Heartland, 821 F.3d 1338, 1344 (Fed. Cir. 2016) (citing Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1567-68 (Fed. Cir. 1994)).  A plaintiff must additionally show that a court's assertion of personal jurisdiction under the circumstances is reasonable and fair.  Radio Systems Corp., 638 F.3d at 789 (citing Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006)).  The Federal Circuit has also found that such cases are generally "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the

---

[1] We need not discuss general jurisdiction as Factory Direct is clearly not "at home" in the Eastern District of Pennsylvania.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (finding that courts may assert general jurisdiction over foreign corporations when their affiliations with the forum state are so "continuous and systematic" that it renders the corporation "at home" in the forum).

4

burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan Co., 21 F.3d at 1568.

Here, Factory Direct has purposely directed its activities to residents of Pennsylvania, plaintiff's claim relates to those activities, and our exercising personal jurisdiction over Factory Direct is fair and reasonable. Factory Direct sold and shipped four pet booster seats to Pennsylvania, and Pet Gear's claims arise out of the sale of these and other pet booster seats that allegedly infringed on Pet Gear's patents. Moreover, this is not the rare situation where the Commonwealth's and Pet Gear's interests in adjudicating this dispute are clearly outweighed by the burden to Factory Direct, as Pennsylvania has an interest in "discouraging injuries that occur within the state." Id. (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). We therefore find it proper to exercise specific personal jurisdiction over Factory Direct, and will deny its motion as to personal jurisdiction.

Factory Direct's motion to dismiss for improper venue must meet a similar fate. Patent infringement actions "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular established place of business." 28 U.S.C. § 1400(b). The Supreme Court has held that 28 U.S.C. § 1400 is the "exclusive provision controlling venue in patent infringement proceedings." Stonite Prods Co. v. Melvin Lloyd Co., 315 U.S. 561, 563 (1942). But we must read § 1400 in conjunction with 28 U.S.C. § 1391(c), as the Federal Circuit has found that Congress's 1988 amendments to § 1391(c) define where a corporation resides for purposes of § 1400(b). See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990); see also LaserLock Technologies, Inc. v. WS Packaging Group, Inc., No. 10-5439, 2011 WL 3667715, at *1 (E.D. Pa. Aug. 22, 2011) (Ditter, J.) (adopting the holding in VE Holding Corp. when determining the

appropriateness of venue). Thus, under § 1400(b), a corporate defendant resides not only in its place of incorporation, see Brunette Mach. Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 707-708 (1972), but, as § 1391 provides, in any district in which a court may exercise personal jurisdiction. Factory Direct is incorporated in Georgia, but, as a Court that has the authority to exercise personal jurisdiction, we find venue is proper in the Eastern District of Pennsylvania.

### B. Motion to Transfer To The Northern District Of Georgia

Factory Direct moves in the alternative that we transfer this case to the Northern District of Georgia, arguing that that District is the most convenient venue for this litigation, as the witnesses and evidence concerning Factory Direct's design, marketing, and manufacturing of its pet booster seats are located in Northern Georgia.[2] Unlike our personal jurisdiction analysis, which relied upon Federal Circuit law, we will apply the guidance of our Court of Appeals when analyzing a motion to transfer venue in patent infringement cases. See, e.g., Logopaint A/S v. 3D Sport Signs SI, No. CV 15-04865, 2016 WL 660897, at *4–5 (E.D. Pa. Feb. 18, 2016); Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001); Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001). We use a two-step inquiry when considering a motion to transfer venue. We first ask whether venue would be proper in the transferee district and, if so, we must then ask whether such transfer would be in the interests of justice. Weber, 155 F. Supp. 2d at 284 (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)). The first step is simple enough – Factory Direct resides in the Northern District

---

[2] We need not consider Factory Direct's motion to dismiss pursuant to the doctrine of forum non conveniens because dismissal under said doctrine is only appropriate where the other available forums for a given matter are state or foreign courts. See DeMateos v. Texaco, Inc., 562 F.2d 895, 899 (3d Cir. 1977).

of Georgia and § 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides…."

We must next consider whether transfer would be in the interests of justice. This requires a "balancing of the interests of justice and the convenience of parties and witnesses," and a court considers factors such as: (1) the convenience and preference of the parties, (2) the convenience of witnesses, (3) access to evidence, (4) practical considerations regarding the cost, ease, and speed of litigation, (5) calendar congestion in the districts, (6) the location of the events at issues and the interest of courts in deciding local controversies, (7) the enforcement of any judgment, and (8) the familiarity of the trial judge with applicable law. Weber, 155 F. Supp. 2d at 285 (citing Jumara, 55 F.3d at 879-880). Moreover, "in patent infringement cases, the preferred forum is that which is the center of gravity of the accused activity." Logopaint A/S v. 3D Sport Signs SI, No. CV 15-04865, 2016 WL 660897, at *4–5 (E.D. Pa. Feb. 18, 2016) (quoting Saint–Gobain Calmar, Inc., 230 F. Supp. 2d at 660). Courts have defined the center of gravity for such claims as "in the district where the alleged infringement occurred," or located "as close as possible to the milieu of the infringing device and the hub of activity centered [on] its production." Saint-Gobain Calmar, Inc., 230 F. Supp. 2d at 660. In determining where the center of gravity is located, a court should consider "the location of the product's development, testing, research and production [and] the place where marketing and sales decisions were made, rather than where limited sales activity has occurred." Id.

The first four factors in Jumara weigh heavily in favor of transferring the case, and, in a nice bit of symmetry, make clear that the center of gravity for this case is the Northern District of Georgia. As to the first factor, the Supreme Court has noted that while it is reasonable to assume that the plaintiff's choice of forum is convenient, "this assumption is much less

reasonable…[and] deserves less deference," when the plaintiff is foreign, as is the case here. <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255-257 (1981).  We will therefore give the plaintiff's choice of forum only some deference.  But, deference to this choice does not outweigh the lack of convenience to the parties.  Neither party is located in, or even particularly near, the Eastern District of Pennsylvania.  Pet Gear is based in Vermont and Factory Direct in Northern Georgia.  Thus, the first factor slightly favors transfer.  The second and third factors, however, weigh <u>heavily</u> in favor of transfer.  This is a patent infringement case where it seems that no key witnesses or evidence are located in the Eastern District of Pennsylvania.  In fact, most of the evidence and witnesses the plaintiff seeks access to are most likely found in the Northern District of Georgia.  The fourth factor, practical considerations of litigation, also point toward transfer, as it will be much easier for the parties to litigate this matter in a court close to where Factory Direct designs and creates the marketing strategy for the products in question.

     The same proffered reasons for why the first four factors favor transfer also make clear that the center of gravity of this patent infringement case is Northern Georgia.  The defendant is located in Northern Georgia and made the marketing and sales decisions relating to this product there.  The pet booster seats were manufactured in China, where there is no United States District Court, so the manufacturing location does not favor keeping this case in Philadelphia.  Moreover, none of the products in question were developed, tested, researched, or designed here.  In fact, it is more than likely that any research and design decisions the defendant made occurred in Northern Georgia.  Finally, the (very) limited Pennsylvania sales Factory Direct made show precisely what other courts have identified as <u>not</u> indicative of a patent infringement case's center of gravity.  Thus, the first four factors not only weigh heavily in favor of transferring this

case to the Northern District of Georgia, they simultaneously confirm that the "center of gravity" for this patent infringement case is located in that district.

Our consideration of the remaining four factors does nothing to alter our calculus. Our calendar congestion is minimal and weighs in favor of keeping the case here. The events at issue took place in Georgia, as evidenced by our "center of gravity" analysis, which points again towards transfer. No local court necessarily has a particular interest in resolving a patent dispute. The ability to enforce the judgment and the familiarity of the judge with patent law weigh neither in favor of, nor against, transfer, as any prevailing party would be able to enforce a judgment throughout the country, and we are confident our colleagues in Georgia are competent in the area of patent law. The last four factors appear to be a wash, and with the first four factors weighing heavily in favor of transfer, it is clear that it is in the interests of justice to transfer this case to the Northern District of Georgia.

Our colleagues have reached cognate conclusions when ruling on motions to transfer venue in patent infringement cases. Judge Joyner found in Saint-Gobain Calmar, 230 F. Supp. 2d at 660-663, that sales in Pennsylvania did not establish the Commonwealth as the "center of gravity of the allegedly infringing activity," and therefore the District of South Carolina was a more appropriate venue since it was the home of defendant's headquarters, where the design and marketing decisions for the product in question were made. More recently, Judge Pappert held that the Southern District of Florida was a more practical location for a patent infringement case between two foreign corporations since Florida was the location where the defendant negotiated and contracted to sell the alleged infringing goods. See Logopaint A/S, 2016 WL 660897, at *5. We agree with our colleagues' analyses and apply the same reasoning here.

Pet Gear's arguments regarding the ubiquity of electronic discovery and its counsel's proximity to this courthouse ring hollow.  While we now live in a world where e-discovery allows parties to access information from almost anywhere on the globe, modern technology cannot serve as a wholly adequate substitute for deposing individuals and examining evidence at the location where it was created.  And counsel's proximity to the courthouse is not something we are to consider when deciding a motion to transfer venue.  See <u>TransCore , L.P. v. Mark IV Industries Corp.</u>, No. 09-2789, 2009 WL 3365870, at *7, fn. 8 (E.D. Pa. Oct. 15, 2009) (citing <u>Solomon v. Continental American Life Ins. Co.</u>, 472 F.2d 1043, 1047 (3d Cir. 1973)).  We therefore reject plaintiff's arguments as to why we should keep this case in this Court.

**V.      Conclusion**

Pet Gear has brought this action in a district where (1) neither party is domiciled, (2) none of the evidence relating to the patent or design of these pet booster seats is located, and (3) the only people to whom Philadelphia is convenient for litigation are the parties' lawyers.  We will therefore deny Factory Direct's motion to dismiss, grant its motion to transfer venue, and transfer this case to the Northern District of Georgia.  An appropriate Order follows.

                                                                                        BY THE COURT:

                                                                                          /s/ Stewart Dalzell, J.
                                                                                        Stewart Dalzell, J.